*In re* FORFEITURE OF BAIL BOND
(PEOPLE v MOORE, PEOPLE v LINEMAN,
PEOPLE v VELEZ, and PEOPLE v SHEPARD)

Docket Nos. 266482, 266483, 266484, 266485. Submitted August 8, 2007, at Grand Rapids. Decided August 28, 2007, at 9:10 a.m.

Gregory Moore, William Lineman, Eduardo Velez, Jr., and Ronald Shepard failed to appear for their criminal trials or sentencings in the Kent Circuit Court, and bench warrants were issued for their arrest. The court, Paul J. Sullivan, J., entered orders in each of the four cases revoking the defendants' releases and ordering forfeiture of their respective surety bonds. After a hearing to allow the Bond Bonding Agency (BBA) to show cause why a judgment should not enter against it for the full amount of the recognizance in each case, the trial court entered judgments against the BBA in varying amounts that were less than the bonds' face values to account for the fact that the trial court had not given the BBA timely notice before ordering forfeiture of the bonds. The Court of Appeals denied the BBA's applications for leave to appeal in all four cases, but the Supreme Court remanded the cases for consideration as on leave granted, 474 Mich 919 (2005), and the Court of Appeals consolidated the cases.

The Court of Appeals *held*:

1. The governing statutory provision in effect at the time Moore, Lineman, and Velez failed to appear in court, MCL 765.28, did not require the trial court to give any notice to the surety. Further, failure to provide proper notice of a principal's default to the bonding agency does not bar the trial court from entering judgment on the forfeited bonds.

2. The amended version of MCL 765.28, which was in effect when Shepard failed to appear in court, required the trial court to notify the surety upon motion by the prosecuting attorney; however, it would not have been possible for the trial court to comply with the statutory seven-day notice requirement in this case because six months had already elapsed between Shepard's default and the prosecutor's motion. Nevertheless, reversal is not required because, although MCL 765.28(1) provides that the trial court "shall" give notice within seven days, the rules of statutory

construction generally preclude construing a time limit for performance of an official duty as mandatory unless there is language that expressly precludes performance of such duty after the specified time has elapsed. Because nothing in MCL 765.28(1) expressly precludes the trial court from entering judgment on the recognizance after the seven-day notice period has elapsed, the seven-day notice provision is directory, not mandatory.

3. The trial court had the authority to enter reduced rather than full judgments on each of the forfeited bonds under both the previous and the current versions of MCL 765.28(1).

Affirmed.

BAIL — SURETY BONDS — FORFEITURE — NOTICE.

The statutory provision stating that a court shall give a bail-bond surety notice within seven days after the principal defaults is directory, not mandatory, because nothing in that provision expressly precludes the trial court from entering judgment on the recognizance after the seven-day notice period has elapsed (MCL 765.28[1]).

*Michael A. Cox*, Attorney General, *Thomas L. Casey*, Solicitor General, *William A. Forsyth*, Prosecuting Attorney, *Timothy K. McMorrow*, Chief Appellate Attorney, and *Kimberly M. Manns*, Assistant Prosecuting Attorney, for the people.

*Maddaloni & Conklin, P.C.* (by *Stacia J. Buchanan*), for the Bond Bonding Agency.

Before: BANDSTRA, P.J., and CAVANAGH and JANSEN, JJ.

JANSEN, J. Our Supreme Court has remanded these consolidated cases for consideration as on leave granted.[1] In each case, Bond Bonding Agency (BBA)

---

[1] *In re Forfeiture of Bail Bonds*, 474 Mich 919 (2005). Justice MARKMAN concurred in the remand order. He suggested that this Court consider not only whether the trial court provided adequate notice before ordering forfeiture of the bonds, but also whether the trial court had the statutory authority to enter judgment for less than the full amounts of the forfeited bonds. *Id.* at 919-920.

appeals the trial court's judgment of forfeiture, arguing that the court failed to provide adequate notice before ordering forfeiture of the surety bond. For the reasons set forth in this opinion, we affirm.

### I. FACTS

#### A. DOCKET NO. 266482

Gregory Moore was arrested and charged with possession with intent to deliver and conspiracy to deliver cocaine. He obtained a $75,000 surety bond from BBA and was released from custody. Moore entered a guilty plea in January 2001. However, he then failed to appear for sentencing in March 2001. Accordingly, the trial court issued a bench warrant for his arrest.

#### B. DOCKET NO. 266483

William Lineman was arrested and charged with one count of embezzlement and one count of writing checks without sufficient funds. He obtained a $5,000 surety bond from BBA and was released from custody. In mid-2001, the trial court granted Lineman's request to temporarily reside in the state of New York while he recovered from surgery. However, Lineman then failed to appear for trial in October 2001. The trial court issued a bench warrant for his arrest.

#### C. DOCKET NO. 266484

Eduardo Velez, Jr., was arrested and charged with possession with intent to deliver cocaine. He obtained a $10,000 surety bond from BBA and was released from custody. In September 2002, Velez failed to appear for trial. The trial court issued a bench warrant for his arrest.

### D. DOCKET NO. 266485

Ronald Shepard was arrested and charged with one count of first-degree criminal sexual conduct and one count of second-degree criminal sexual conduct. He obtained a $20,000 surety bond from BBA and was released from custody. Shepard pleaded guilty to one count of second-degree criminal sexual conduct. However, he subsequently failed to appear for sentencing in September 2003. The trial court therefore issued a bench warrant for his arrest.

### E. FORFEITURE OF THE BONDS

On March 16, 2004, the trial court entered an order in each of the four cases revoking the defendant's release and ordering forfeiture of the surety bond. Each order provided in part:

> TO THE DEFENDANT/PARENT AND JUVENILE:
>
> You have 28 days from the date of this order to surrender yourself to the court or to satisfy the court that there was compliance with the conditions of release/bond, or that compliance was impossible through no fault of the defendant/juvenile. Otherwise judgment in the full face amount or value of your bond, plus costs, will be entered against you. Money or other security on deposit will be used toward payment of the judgment.

Each order further provided that "copies of this order and notice were served on the defendant/parent and surety or person who posted bond by ordinary mail . . . ."

The prosecution requested that the trial court direct BBA to show cause why a judgment should not enter against it in each case for the full amount of the recognizance. A show-cause hearing was held. BBA argued that the trial court should not enter judgment

against it on the bonds because the court had failed to give timely notice of the defendants' failures to appear. BBA argued that it therefore had not received a meaningful opportunity to apprehend and deliver the defendants to the proper authorities. The prosecution maintained that the trial court's failure to provide timely notice of the defendants' failures to appear did not relieve BBA of its obligations under the bail bond contracts.

At the conclusion of the hearing, the trial court ruled:

> The Court, over the past several months, if not years, has obviously, for whatever reason, been somewhat dilatory in providing notice to sureties. There is a contract, the primary reason for the surety bond to begin with is to secure the appearance of the individual, with respect to all of the individuals for whom these bonds were written and filed with the Court. They have all failed to appear.
>
> The Court also recognizes that with the passage of time, it does become a bit more difficult . . . . [F]rom a practical standpoint, passage of time does, it seems to me, have an impact on the amount of effort that might be necessary to locate and apprehend and present an absent defendant.
>
> * * *
>
> The Court has some discretion on these matters, and nowhere is a remedy talked about.
>
> * * *
>
> What I'm thinking here, and it's—what I am going to do, from a very practical standpoint, recognizing what's been said here today, is I'm going to take into account the passage of time, understanding that six years would trigger the statute of limitations, I'm going to take the time limit indicated by—and this isn't mathematically precise, but the time limits indicated by counsel in his arguments, and I'm going to enter judgment for a reduced amount with respect to all of them.

The trial court further explained:

> There's nothing mathematical—this is a decision on the part of the Court to take into account that legitimate arguments raised by the suret[y] in this matter, and yet not totally emasculate the reasons for the bond. These were contracts, the surety companies were paid, presumably paid commissions or fees, and I think you can argue seven-day notice, 14-day notice, 20-day notice, all of which is past; as soon as that goes by, that means these bonds are meaningless? I don't think that's what the Legislature had in mind. I don't think that's what the Supreme Court had in mind. But clearly they did have in mind that there ought to be timely notice, and the Court would concede that timely notice was not given in these cases, and I think adjustments are necessary, and that's the way the Court has elected to address that issue and make those judgments.

With respect to Docket No. 266482, the trial court noted that it had not given BBA notice until three years after Moore's failure to appear. The trial court entered judgment against BBA in the amount of $37,500, which equaled 50 percent of the value of the bond.

With respect to Docket No. 266483, the trial court noted that it had not given BBA notice until 2½ years after Lineman's failure to appear. The trial court entered judgment against BBA in the amount of $2,900, which equaled 58 percent of the value of the bond.

With respect to Docket No. 266484, the trial court noted that it had not given BBA notice until 1½ years after Velez's failure to appear. The trial court entered judgment against BBA in the amount of $7,500, which equaled 75 percent of the value of the bond.

Lastly, with respect to Docket No. 266485, the trial court noted that it had not given BBA notice until six months after Shepard's failure to appear. The trial

court entered judgment against BBA in the amount of $18,400, which equaled 92 percent of the value of the bond.

## II. STANDARDS OF REVIEW

We review a trial court's decision regarding forfeiture of a bail bond for an abuse of discretion. *People v Munley*, 175 Mich App 399, 403; 438 NW2d 292 (1989). The interpretation of a court rule or statute is a question of law that we review de novo. *People v McGee*, 258 Mich App 683, 686; 672 NW2d 191 (2003). Our primary task in interpreting a statute is to discern and give effect to the intent of the Legislature. *People v Williams*, 268 Mich App 416, 425; 707 NW2d 624 (2005). "The words contained in a statute provide us with the most reliable evidence of the Legislature's intent." *Id.* The legal principles that apply to the interpretation of statutes also apply to the interpretation of court rules. *People v Phillips*, 468 Mich 583, 589; 663 NW2d 463 (2003).

## III. TIMELINESS OF THE NOTICE

In all four cases, BBA argues that the trial court failed to provide sufficient notice before ordering forfeiture of the bonds. BBA asserts that the untimely nature of the notices deprived it of the ability to apprehend and deliver the defendants to the trial court. BBA contends that in light of the untimely notices to the surety, the trial court lacked the authority to order forfeiture of the recognizances. We disagree.

At a defendant's first appearance before a court, the court may order that the defendant be "released conditionally, with or without money bail (ten percent, cash or surety)." MCR 6.106(A)(3). In these cases, defen-

dants were released from custody after posting surety bonds issued by BBA. "A surety bond is a contract between the government, a principal, and a surety whereby the surety promises that if the principal defaults, the surety will pay the judgment on the bond." *In re Forfeiture of Surety Bond*, 208 Mich App 369, 371; 529 NW2d 312 (1995). A surety is "one who executes a bail bond and binds himself to pay the bail if the person in custody fails to comply with all conditions of the bail bond." MCL 780.61(b). "Surety bonds may be posted by a commercial 'bondsman,' who collects a fee for this service . . . , or by a private individual, who generally pledges real property to the court in exchange for the defendant's release." *People v Evans*, 434 Mich 314, 320 n 3; 454 NW2d 105 (1990).

When a principal defaults by failing to appear, a surety is authorized to arrest and deliver the principal to the jail or to the county sheriff, with or without the assistance of a police officer. MCL 765.26(1). A surety is generally discharged from responsibility on the bond when the principal has been returned to custody or delivered to the proper authorities, MCL 765.26(1); *People v Harbin*, 88 Mich App 341, 343-344; 276 NW2d 607 (1979), or when the principal's case is finally determined, *People v Brow*, 253 Mich 140, 142; 234 NW 117 (1931).

After defendants were released from custody, they failed to comply with the conditions of their release. Specifically, defendants failed to appear in court when ordered to do so. Defendants' failures to appear occurred between March 2001 and September 2003. At all times relevant to this appeal, MCR 6.106(I)[2] provided in pertinent part:

---

[2] MCR 6.106 has since been amended, but the notice provisions of MCR 6.106(I) have remained substantially the same.

(2) If the defendant has failed to comply with the conditions of release, the court may issue a warrant for the arrest of the defendant and enter an order revoking the release order and declaring the bail money deposited or the surety bond, if any, forfeited.

(a) The court must mail notice of any revocation order immediately to the defendant at the defendant's last known address and, if forfeiture of bond has been ordered, to anyone who posted bond.

(b) If the defendant does not appear and surrender to the court within 28 days after the revocation date or does not within the period satisfy the court that there was compliance with the conditions of release or that compliance was impossible through no fault of the defendant, the court may continue the revocation order and enter judgment for the state or local unit of government against the defendant and anyone who posted bond for the entire amount of the bond and costs of the court proceedings.

In each case, within days of the defendant's failure to appear, the trial court issued a bench warrant for the defendant's arrest. Subsequently, on March 16, 2004, the trial court entered an order in each case revoking the defendant's release and forfeiting his bond. The trial court immediately provided notice of the revocation orders to the defendants and to BBA, as required by the former MCR 6.106(I)(2)(a).[3]

Each defendant failed to appear and surrender to the court within 28 days after the revocation date. Thus, pursuant to the former MCR 6.106(I)(2)(b), the trial court had discretion[4] to enter judgments against BBA

---

[3] Indeed, counsel for BBA acknowledged at oral argument before this Court that the trial court had complied with the terms of the former MCR 6.106(I)(2)(a).

[4] The relevant language of the court rule provided that if the defendant failed to surrender within 28 days, "the court *may* continue the revocation order and enter judgment for the state or local unit of government against . . . anyone who posted bond for the entire amount of the bond

"for the entire amount of the bond and costs of the court proceedings." Although the trial court did not order forfeiture of the bonds in these cases until months or even years after each respective defendant initially failed to appear, the former MCR 6.106 provided no particular timeframe for entry of the order revoking release and forfeiting the bond. We conclude that the trial court's actions fully comported with the former MCR 6.106(I) in each of the four cases.

### A. DEFENDANTS MOORE, LINEMAN, AND VELEZ

The forfeiture of recognizances is not solely governed by court rule. It is also governed by chapter 5 of Michigan's code of criminal procedure, MCL 765.1 *et seq.* At the time that Moore, Lineman, and Velez initially failed to appear, MCL 765.28 provided:

> In addition to any other method available, it is hereby provided that whenever default shall be made in any recognizance in any court of record, the same shall be duly entered of record by the clerk of said court and thereafter said court, upon the motion of the attorney general, prosecuting attorney or city attorney, may give the surety or sureties twenty days' notice, which notice shall be served upon said surety or sureties in person or left at his or their last known place of residence. Said surety or sureties shall be given an opportunity to appear before the court on a day certain and show cause why judgment should not be entered against him or them for the full amount of such recognizance. If good cause is not shown, the court shall then enter judgment against the surety or sureties on said recognizance for such amount as it may see fit not exceeding the full amount thereof. Execution shall be awarded and executed upon said judgment in like manner as is provided in personal actions.

---

and costs of the court proceedings." Former MCR 6.106(I)(2)(b) (emphasis added). The statutory term "may" is permissive. *People v Gubachy*, 272 Mich App 706, 712; 728 NW2d 891 (2006).

Thus, the statutory language in effect at the time that Moore, Lineman, and Velez defaulted provided merely that the court "may give the surety or sureties twenty days' notice . . . ." Former MCL 765.28. It is well settled that the statutory term "may" is permissive and therefore indicative of discretion. *People v Gubachy*, 272 Mich App 706, 712; 728 NW2d 891 (2006); see also *People v Seeburger*, 225 Mich App 385, 392; 571 NW2d 724 (1997). Quite simply, the statute in effect at the time that Moore, Lineman, and Velez defaulted did not require notice to the surety within a specific number of days, nor did it require notice to the surety at all. Instead, under the relevant statutory language, the trial court had *discretion* to give BBA 20 days' notice of Moore's, Lineman's, and Velez's failures to appear.[5]

Moreover, we cannot omit mention of the fact that "[n]o action brought upon any recognizance entered into in any criminal prosecution . . . shall be barred or defeated nor shall judgment thereon be arrested, by reason of any neglect or omission to note or record the default of any principal or surety at the time when such default shall happen . . . ." MCL 765.27; see also *People v Woodall*, 85 Mich App 514, 515; 271 NW2d 298 (1978). Therefore, even if the trial court had erred in failing to timely notify BBA of Moore's, Lineman's, and Velez's defaults, the untimely notice to BBA would not have

---

[5] The former MCL 768.28(1) did require the trial court to afford the surety an opportunity to appear and be heard before judgment. Indeed, it is well established that once a default occurs, the surety must be given an opportunity to appear before the court and show cause why judgment should not be entered against it. *In re Forfeiture of Surety Bond, supra* at 374. A trial court may not order judgment on a forfeited bond without first conducting a show-cause hearing. *People v Person*, 44 Mich App 630, 631; 205 NW2d 610 (1973). "Due process so requires." *Id.* Such an opportunity to appear and be heard was provided to BBA in all the cases at issue here.

barred or otherwise impeded the trial court's authority to enter judgment on the forfeited bonds. MCL 765.27.

### B. DEFENDANT SHEPARD

Unlike the other three defendants, by the time Shepard defaulted in September 2003, MCL 765.28 had been amended. See 2002 PA 659. Consequently, when Shepard failed to appear in court, the statute provided:

> If default is made in any recognizance in a court of record, the default shall be entered on the record by the clerk of the court. After the default is entered, the court, upon the motion of the attorney general, prosecuting attorney, or the attorney for the local unit of government, *shall give each surety immediate notice not to exceed 7 days after the date of the failure to appear.* The notice shall be served upon each surety in person or left at the surety's last known business address. Each surety shall be given an opportunity to appear before the court on a day certain and show cause why judgment should not be entered against the surety for the full amount of the recognizance. If good cause is not shown, the court shall enter judgment against the surety on the recognizance for an amount determined appropriate by the court but not more than the full amount of the recognizance. Execution shall be awarded and executed upon the judgment in the manner provided for in personal actions. [MCL 765.28(1), as amended by 2002 PA 659 (emphasis added).][6]

Pursuant to MCL 765.28(1), as amended by 2002 PA 659, the trial court was required to notify BBA of Shepard's default "upon the motion of the attorney general, prosecuting attorney, or the attorney for the local unit of government . . . ." In March 2004, the prosecuting attorney did indeed file a motion to show cause why judgment should not be entered against BBA

---

[6] MCL 765.28(1) was again amended after the judgments were entered in this case. See 2004 PA 332.

for the full amount of Shepard's surety bond. However, it would not have been possible for the trial court to comply with the seven-day notice requirement of MCL 765.28(1), as amended by 2002 PA 659, in this case. By the time the prosecution filed its motion in March 2004, thereby triggering the trial court's seven-day notice obligation, approximately six months had already elapsed since Shepard's initial failure to appear in court.

Nevertheless, even assuming arguendo that the prosecuting attorney had promptly moved for judgment on the bond and that the trial court had been able to comply with the statutory seven-day notice requirement, we would still find no basis for reversal. We realize that MCL 765.28(1), as amended by 2002 PA 659, provided that the trial court "shall" give notice to the surety within seven days after the date of the defendant's default. We further acknowledge that, in general, the word "shall" "carries a mandatory, nondiscretionary connotation." *People v Brown*, 249 Mich App 382, 386; 642 NW2d 382 (2002); see also *People v Francisco*, 474 Mich 82, 87; 711 NW2d 44 (2006) (noting that " '[s]hall' is a mandatory term, not a permissive one"). However, as we have previously stated:

> [T]he fundamental rules of statutory construction generally preclude construction of a time limit for performance of an official duty as being mandatory, absent language that expressly precludes performance of such duty after the specified time has elapsed. Such statutes are normally construed as being "directory." In this context, the term "directory" means something less than the alternative of compliance or absolute dismissal. [*People v Yarema*, 208 Mich App 54, 57; 527 NW2d 27 (1994) (internal citations omitted).]

Similarly, we have noted that " '[t]he general rule is that if a provision of a statute states a time for perfor-

mance of an official duty, without any language denying performance after a specified time, it is directory.' " *People v Smith,* 200 Mich App 237, 242; 504 NW2d 21 (1993), quoting 3 Sutherland, Statutory Construction (5th ed), § 57.19, pp 47-48.

We conclude that the seven-day notice provision of MCL 765.28(1) is directory, not mandatory. The statute does not contain any language precluding the trial court from entering a judgment against a surety when notice is not given within seven days after the defendant's default. In other words, nothing in MCL 765.28(1) expressly precludes the trial court from entering judgment on the recognizance after the specified seven-day notice period has elapsed. See *Yarema, supra* at 57. Despite the trial court's six-month delay in notifying BBA of Shepard's failure to appear, we conclude that the statute did not prevent the trial court from entering judgment against BBA on the forfeited surety bond.

Moreover, as in the case of defendants Moore, Lineman, and Velez, the language of MCL 765.27 necessarily informs our decision concerning defendant Shepard. The Legislature has plainly declared that the trial court's failure to provide proper notice of a principal's default does not bar or preclude the court's authority to enter judgment on a forfeited recognizance. MCL 765.27. Therefore, regardless of whether the trial court properly notified BBA of Shepard's initial failure to appear, we conclude that the trial court retained the authority to enter judgment on Shepard's forfeited bond.

### IV. REDUCED JUDGMENTS ON THE FORFEITED BONDS

The only issue remaining to be addressed is whether the trial court had the authority to enter *reduced*

judgments on each of the forfeited bonds rather than entering judgment for the *full face amount* of each bond. We hold that the trial court did possess the authority to enter such reduced judgments.

In entering judgment, the trial court acknowledged the difficulty that a surety might face in apprehending a principal when the court fails to provide timely notice of the principal's default. In recognition of this apparent difficulty, the trial court reduced the amount of the judgment in each case in proportion to the amount of time that had elapsed between the principal's failure to appear and the date that notice was ultimately provided to BBA.[7] Thus, the judgment amount in each case was actually less than the face amount of the respective surety bond.

The statute in effect at the time judgment was entered in these cases provided that "[i]f good cause is not shown, the court shall enter judgment against the surety on the recognizance *for an amount determined appropriate by the court but not more than the full amount of the recognizance.*" Former MCL 765.28(1) (emphasis added); see also *Evans, supra* at 331 n 14 (referring to the trial court's reduced judgment on a forfeited bond under the former MCL 765.28 as a "set-off" against the full value of the bond). As noted, MCL 765.28(1) was again amended after judgment was entered in these cases. See 2004 PA 332. The current MCL 765.28(1) provides:

---

[7] The record indicates that the trial court calculated the judgment amounts by multiplying the value of the bond by the portion of the six-year statute of limitations that had not elapsed. For example, where the delay was three years (50 percent of the six-year limitation period), the trial court entered a judgment for 50 percent of the value of the bond. Where the delay was six months (about eight percent of the six-year limitation period), the trial court entered a judgment for 92 percent of the value of the bond.

> If good cause is not shown for the defendant's failure to appear, the court shall enter judgment against the surety on the recognizance for an amount determined appropriate by the court but not more than the full amount of the bail, or if a surety bond has been posted the full amount of the surety bond. If the amount of a forfeited surety bond is less than the full amount of the bail, the defendant shall continue to be liable to the court for the difference, unless otherwise ordered by the court.

Both the former and the current MCL 765.28(1) plainly authorize the trial court, in its discretion, to enter judgment in an amount less than the full face value of the forfeited surety bond. Thus, the trial court was not required to enter judgment on the full face amount of each of the forfeited recognizances. We conclude that the trial court properly exercised its discretion by entering reduced judgments on each of the four surety bonds in these cases. MCL 765.28(1).

Affirmed.