# Syllabus

| | |
|---|---|
| Chief Justice:<br>Robert P. Young, Jr. | Justices:<br>Michael F. Cavanagh<br>Stephen J. Markman<br>Mary Beth Kelly<br>Brian K. Zahra<br>Bridget M. McCormack<br>David F. Viviano |

This syllabus constitutes no part of the opinion of the Court but has been prepared by the Reporter of Decisions for the convenience of the reader.

Reporter of Decisions:
Corbin R. Davis

*In re* BAIL BOND FORFEITURE

Docket No. 146033.  Argued October 8, 2013 (Calendar No. 1).  Decided June 25, 2014.

Corey Deshawn Gaston was released from jail on a $50,000 bond posted by You Walk Bail Bond Agency, Inc.  He thereafter failed to appear at a February 7, 2008 pretrial conference and at his February 11, 2008 trial in the Wayne Circuit Court.  The court, Deborah A. Thomas, J., ordered Gaston to be rearrested and remanded to jail and that his bond be forfeited.  However, the court did not give the surety notice of Gaston's failure to appear until three years later.  The surety moved to set aside the forfeiture on the ground that the court had failed to timely provide the surety notice of Gaston's failure to appear as required by MCL 765.28(1).  The court, Michael M. Hathaway, J., denied the motion in reliance on *In re Bail Bond Forfeiture (People v Moore)*, 276 Mich App 482 (2007), which held that a court's failure to comply with the seven-day notice provision of MCL 765.28(1) does not bar forfeiture of a bail bond posted by a surety, and entered a judgment against Gaston for $150,000 and against the surety for $50,000.  The surety appealed.  The Court of Appeals, FORT HOOD, P.J., and METER and MURRAY, JJ., affirmed in an unpublished opinion per curiam on the basis of *Moore*.  The Supreme Court granted the surety's application for leave to appeal.  493 Mich 936 (2013).

In a unanimous opinion by Justice MARKMAN, the Supreme Court *held*:

A court's failure to comply with the seven-day notice provision of MCL 765.28(1) bars forfeiture of a bail bond posted by a surety.  When a statute provides that a public officer shall undertake some action within a specified period of time, and that period is provided to safeguard another's rights or the public interest, it is mandatory that the action be undertaken within that period, and noncompliant public officers are prohibited from proceeding as if they had complied with the statute.  The Court of Appeals judgment was reversed, the trial court's orders were vacated to the extent that they forfeited the bail bond posted by the surety, and *Moore* was overruled.

1.  MCL 765.28(1) provides that after a default is entered for an accused who was released on bail, the court "shall" give each surety immediate notice not to exceed seven days after the date of the failure to appear.  *Moore*'s holding that failure to provide the required notice does not bar forfeiture of the bail bond was based on the general rule set forth in Sutherland's treatise on statutory construction that if a provision of a statute states a time for performance of an official duty, without any language denying performance after a specified time, it is directory, not mandatory.  However, *Moore* failed to recognize the consequence of the fact that when the

Legislature amended MCL 765.28(1) in 2002, it changed "may" to "shall," as a result of which the statute became mandatory. In addition, *Moore* failed to recognize the rule set forth in *Agent of State Prison v Lathrop*, 1 Mich 438, 444 (1850), that whenever the act to be done under a statute is to be done by a public officer, and concerns the public interest or the rights of third persons, which require the performance of the act, then it becomes the duty of the officer to do it. *Moore* also failed to recognize the exception to Sutherland's general rule, which states that when the time period is provided to safeguard someone's rights, it must be construed as mandatory. The *Lathrop* rule and Sutherland's exception applied to MCL 765.28(1) because the seven-day period provides three such safeguards: the surety's right to an effective opportunity to secure the defendant before having its bond forfeited, the interests of the public in being protected from individuals who have been charged with crimes, and the public's interest in justice under law by ensuring that absconders who have been charged with crimes timely face those charges in court. Accordingly, *Moore* was overruled.

2. The remedy for a public entity's failure to follow a mandatory time period is that the public entity cannot perform its official duty after the time requirement has passed. A public entity's power only arises from the performance of the acts required to be done by law. Therefore, when a public entity does not perform its statutory obligations in a timely manner and fails to respect the statutory preconditions to its exercise of authority, it lacks the authority to proceed as if it had. Accordingly, in this case, the court could not require the surety to pay the surety bond because the court had failed to provide the surety notice within seven days of defendant's failure to appear, as MCL 765.28(1) required. Any other interpretation of the statute would have rendered the seven-day-notice requirement nugatory.

Court of Appeals judgment reversed; trial court orders vacated to the extent they forfeited the bail bond and ordered the surety to pay $50,000.

Chief Justice YOUNG, concurring, fully joined the majority opinion but wrote separately to emphasize that the exception to the general rule that courts must refrain from creating remedies for violations of statutory mandates when the Legislature has not seen fit to do so is a narrow one that restrains the performance of official action. This exception is not a basis for courts to fashion additional extrastatutory remedies that permit official action.

Justice VIVIANO, joined by Justices CAVANAGH and MARKMAN, concurring, agreed that, absent compliance with the notice provision in MCL 765.28(1), a trial court may not order a surety to forfeit its bond; however, he would also have held that because the notice provision is mandatory, a court's noncompliance with it mandates discharge of the bond.

# Opinion

Chief Justice:  Justices:
Robert P. Young, Jr.  Michael F. Cavanagh
Stephen J. Markman
Mary Beth Kelly
Brian K. Zahra
Bridget M. McCormack
David F. Viviano

FILED June 25, 2014

STATE OF MICHIGAN

SUPREME COURT

_____

*In re* FORFEITURE OF BAIL BOND

_____

PEOPLE OF THE STATE OF MICHIGAN,

　　　　Plaintiff-Appellee,

v                                                                No. 146033

COREY DESHAWN GASTON,

　　　　Defendant,

and

YOU WALK BAIL BOND AGENCY,
INC.,

　　　　Surety-Appellant.

_____

BEFORE THE ENTIRE BENCH

MARKMAN, J.

This Court granted leave to appeal to address whether the trial court's failure to

provide the appellant-surety notice within seven days of defendant's failure to appear, as

is required by MCL 765.28, bars forfeiture of the bail bond posted by the surety. Relying on *In re Forfeiture of Bail Bond (People v Moore)*, 276 Mich App 482; 740 NW2d 734 (2007), the Court of Appeals held that a court's failure to comply with the seven-day notice provision of MCL 765.28(1) does not bar forfeiture of a bail bond posted by a surety. Because we conclude that *Moore* was wrongly decided, we hold that a court's failure to comply with the seven-day notice provision of MCL 765.28(1) does bar forfeiture of a bail bond posted by a surety. When a statute provides that a public officer "shall" undertake some action within a specified period of time, and that period of time is provided to safeguard another's rights or the public interest, as with the statute at issue here, it is mandatory that such action be undertaken within the specified period of time, and noncompliant public officers are prohibited from proceeding as if they had complied with the statute. Accordingly, we reverse the judgment of the Court of Appeals and vacate the trial court's orders to the extent that the orders forfeited the bail bond posted by the surety and ordered the surety to pay $50,000.

## I. FACTS AND HISTORY

Defendant Corey Deshawn Gaston was charged with one count of first-degree home invasion, MCL 750.110a(2); two counts of first-degree criminal sexual conduct, MCL 750.520b(1)(a) and (2)(b); one count of second-degree criminal sexual conduct, MCL 750.520c(1)(a); and one count of kidnapping, MCL 750.350. Appellant-surety posted a $50,000 bond to obtain defendant's release from jail. On February 7, 2008, defendant failed to appear at a scheduled conference, and on February 11, 2008, defendant failed to appear for trial. The trial court ordered that defendant be rearrested

2

and remanded to jail and that his bond be forfeited. Three years later, on February 8, 2011, the trial court sent notice to the surety to appear to show cause why judgment should not enter for forfeiture of the full amount of the bond. In response, the surety filed a motion to set aside the forfeiture based on the trial court's failure to timely provide notice of defendant's failure to appear, as is required by MCL 765.28(1). Relying on *Moore*, the trial court denied the motion and entered a judgment against defendant in the amount of $150,000 and against the surety in the amount of $50,000.

The surety appealed in the Court of Appeals, arguing that the trial court's failure to provide it notice of defendant's failure to appear within seven days, as is required by MCL 765.28(1), should have barred the forfeiture of the surety's bond. The Court of Appeals, also relying on *Moore*, affirmed the trial court and held that the trial court's failure to provide the surety notice of defendant's failure to appear within seven days did not foreclose the court from entering judgment on the forfeited bond. *In re Forfeiture of Bail Bond (People v Gaston)*, unpublished opinion per curiam of the Court of Appeals, issued September 13, 2012 (Docket No. 305004).

The surety then appealed in this Court, presenting the same argument that it had before the trial court and the Court of Appeals. This Court granted leave to appeal to address

> (1) whether a court's failure to comply with the 7-day notice provision of MCL 765.28 bars forfeiture of a bail bond posted by a surety and (2) whether *In re Forfeiture of Bail Bond (People v Moore)*, 276 Mich App 482 (2007), holding that the 7-day notice provision is directory rather than mandatory, was correctly decided. [*In re Forfeiture of Bail Bond (People v Gaston)*, 493 Mich 936 (2013).]

3

Defendant is still at large and is currently identified as one of the United States Marshals' fifteen most wanted fugitives.[1]

## II. STANDARD OF REVIEW

Questions of statutory interpretation are questions of law that are reviewed de novo. *Martin v Beldean*, 469 Mich 541, 546; 677 NW2d 312 (2004). Questions relating to the proper interpretation of court rules are also questions of law that are reviewed de novo. *People v Burns*, 494 Mich 104, 110; 832 NW2d 738 (2013).

## III. ANALYSIS

MCL 765.28(1) provides in pertinent part:

> If default is made in any recognizance in a court of record, the default shall be entered on the record by the clerk of the court. After the default is entered, *the court shall give each surety immediate notice not to exceed 7 days after the date of the failure to appear*. The notice shall be served upon each surety in person or left at the surety's last known business address. Each surety shall be given an opportunity to appear before the court on a day certain and show cause why judgment should not be entered against the surety for the full amount of the bail or surety bond. If good cause is not shown for the defendant's failure to appear, the court shall enter judgment against the surety on the recognizance for an amount determined appropriate by the court but not more than the full amount of the bail, or if a surety bond has been posted the full amount of the surety bond. If the amount of a forfeited surety bond is less than the full amount of the bail, the defendant shall continue to be liable to the court for the difference, unless otherwise ordered by the court. [Emphasis added.]

MCR 6.106(I)(2) provides in pertinent part:

> If the defendant has failed to comply with the conditions of release, the court may issue a warrant for the arrest of the defendant and enter an

---

[1] See U.S. Marshals, *Fugitive Investigations - 15 Most Wanted*, <http://www.usmarshals.gov/investigations/most_wanted/index.html> (accessed June 10, 2014) [http://perma.cc/Z992-2ZMQ].

order revoking the release order and declaring the bail money deposited or the surety bond, if any, forfeited.

> (a) *The court must mail notice* of any revocation order *immediately* to the defendant at the defendant's last known address and, if forfeiture of bail or bond has been ordered, *to anyone who posted bail or bond.* [Emphasis added.]

In this case, there is no question that the trial court failed to provide the surety notice within seven days after the date of defendant's failure to appear, as is required by MCL 765.28(1), or provide the surety notice of the revocation order "immediately," as is required by MCR 6.106(I)(2). The question at issue is whether this failure to provide the required notice bars forfeiture of the bail bond posted by the surety. Both the trial court and the Court of Appeals relied on *Moore*, 276 Mich App at 495, in concluding that the failure to provide notice does not bar such a forfeiture.

In *Moore*, the trial court entered a judgment against the surety even though the trial court had not timely notified the surety, and the Court of Appeals denied leave to appeal. This Court remanded to the Court of Appeals for consideration as on leave granted. *In re Forfeiture of Bail Bond (People v Moore)*, 474 Mich 919 (2005). On remand, the Court of Appeals affirmed the trial court and held that " ' "[t]he general rule is that if a provision of a statute states a time for performance of an official duty, without any language denying performance after a specified time, it is directory." ' " *Moore*, 276 Mich App at 494-495, quoting *People v Smith*, 200 Mich App 237, 242; 504 NW2d 21 (1993), quoting 3 Sutherland, Statutory Construction (5th ed), § 57:19, pp 47-48. Relying on this "general rule," the Court of Appeals held that "the seven-day notice provision of MCL 765.28(1) is directory, not mandatory" and therefore concluded that "[d]espite the trial court's six-month delay in notifying [the surety] of [defendant's]

5

failure to appear, . . . the statute did not prevent the trial court from entering judgment against [the surety] on the forfeited surety bond." *Moore*, 276 Mich App at 495.

The Court of Appeals' decision in *Moore* was not appealed in this Court, and therefore this is the first opportunity for this Court to consider whether *Moore* was correctly decided. For the reasons that follow, we conclude that it was not. To begin with, *Moore* gave only passing consideration to the "general rule" that " '[s]hall' is a mandatory term, not a permissive one." *People v Francisco*, 474 Mich 82, 87; 711 NW2d 44 (2006); see also *Fradco, Inc v Dep't of Treasury*, 495 Mich 104, 114; 845 NW2d 81 (2014) ("The Legislature's use of the word 'shall' . . . indicates a mandatory and imperative directive."); 3 Sutherland, Statutory Construction (7th ed), § 57:19, pp 75-76 ("Generally, when the word 'shall' is used in referring to a time provision, it should be construed to be mandatory.").

Along similar lines, *Moore* failed to recognize the consequence of the fact that the Legislature amended MCL 765.28(1) in 2002, changing "may" to "shall." See *Fay v Wood*, 65 Mich 390, 397; 32 NW 614 (1887) (recognizing that the significance of a statutory amendment changing "should" to "shall" is that the statute becomes "mandatory"). Prior to 2002, MCL 765.28(1) provided that the court "*may* give the surety or sureties twenty days' notice." (Emphasis added.) In 2002, the Legislature amended MCL 765.28(1) to provide that the court "*shall* give each surety immediate notice not to exceed 7 days after the date of the failure to appear." 2002 PA 659 (emphasis added). While the term "may" is permissive, not mandatory, *Browder v Int'l Fidelity Ins Co*, 413 Mich 603, 612; 321 NW2d 668 (1982), the term "shall," as discussed, is a "mandatory term, not a permissive one," *Francisco*, 474 Mich at 87.

6

Therefore, in 2002, the Legislature changed the notice provision of MCL 765.28(1) from being permissive to being mandatory. Yet, despite this change, *Moore* continued to interpret the notice provision of MCL 765.28(1) as being permissive rather than mandatory. *Moore* construed the statute as if it still read "may," thereby rendering the 2002 amendment of the statute nugatory even though it is well established that " '[c]ourts must give effect to every word, phrase, and clause in a statute and avoid an interpretation that renders nugatory or surplusage any part of a statute.' " *People v Couzens*, 480 Mich 240, 249; 747 NW2d 849 (2008) (citation omitted).

*Moore* also failed to recognize that this Court has long held that " 'whenever the act to be done under a statute is to be done by a public officer, and concerns the public interest or the rights of third persons, which require the performance of the act, then it becomes the duty of the officer to do it.' " *Agent of State Prison v Lathrop*, 1 Mich 438, 444 (1850) (citation omitted). In *Lathrop*, this Court concluded that because the applicable statutory notice provision-- which provided that it "*shall* be the duty of the agent to give at least twenty days' notice," *id*. at 439 (emphasis added)-- "was intended for the benefit of the state as well as those who may contract with it," "compliance with the duties set forth [were] necessary to carry into effect the object of the law . . . ." *Id*. at 444. In other words, because the statutory notice provision was designed to protect the public interest, as well as the rights of third persons, it must be construed as a mandatory provision. Cf. *Fay*, 65 Mich at 401 ("Statutes fixing a time for the doing of an act are considered as only directory, where the time is not fixed for the purpose of giving a party a hearing, or for some other purpose important to him."); *Hooker v Bond*, 118 Mich 255, 257; 76 NW 404 (1898), quoting Cooley, Taxation (2d ed), p 289 (" 'The fixing of an

7

exact time for the doing of an act is only directory, where it is not fixed for the purpose of giving the party a hearing, or for any other purpose important to him.' ").  Because " '[t]his Court [must] presume that the Legislature of this state is familiar with the principles of statutory construction,' " *Nation v W D E Electric Co*, 454 Mich 489, 494-495; 563 NW2d 233 (1997) (citation omitted), we must presume that when the Legislature amended MCL 765.28(1) in 2002, changing "may" to "shall," it intended "shall" to mean what this Court has held that "shall" means since at least 1850.

The *Lathrop* rule is very similar to the rule set forth in 3 Sutherland, § 57:19, pp 72-74:

> It is difficult to conceive of anything more absolute than a time limitation.  And yet, for obvious reasons founded in fairness and justice, time provisions are often found to be directory where a mandatory construction might do *great injury to persons not at fault*, as in a case where slight delay on the part of a public officer might *prejudice private rights or the public interest*.  The general rule is that if a provision of a statute states a time for performance of an official duty, without any language denying performance after a specified time, it is directory.  However, if the time period is provided to *safeguard someone's rights*, it is *mandatory*, and the agency cannot perform its official duty after the time requirement has passed.  [Emphasis added.]

While *Moore* quoted and relied on the "general rule" articulated by Sutherland, it completely ignored the sentences immediately preceding and following Sutherland's articulation of the rule.  That is, while *Moore* adopted Sutherland's general rule, it did not give any consideration to Sutherland's explanation regarding when this general rule should and should not be applied.  Specifically, in the sentence that immediately follows the general rule, Sutherland explained that "if the time period is provided to safeguard

8

someone's rights, it is mandatory, and the agency cannot perform its official duty after the time requirement has passed." *Id.*

This exception to Sutherland's general rule would certainly apply in this case because the time period at issue was clearly "provided to safeguard someone's rights." Cf. *Smith*, 200 Mich App at 243 ("The time limits were created not to protect the rights of accused drunk drivers, but to prod the judiciary, and the prosecutors who handle drunk driving cases, to move such cases with dispatch."). Indeed, it was provided to safeguard both the rights of the surety and the public interest. Requiring the court to provide notice to the surety within seven days of the defendant's failure to appear clearly protects the rights of the surety by enabling the surety to promptly initiate a search for the defendant, which is obviously significant to the surety because "[a] surety is generally discharged from responsibility on the bond when the [defendant] has been returned to custody or delivered to the proper authorities . . . ." *Moore*, 276 Mich App at 489; see also MCL 765.26(2) ("Upon delivery of his or her principal at the jail by the surety or his or her agent or any officer, the surety shall be released from the conditions of his or her recognizance."). A surety's ability to apprehend an absconding defendant is directly affected by whether the surety has received prompt notice of the defendant's failure to appear because the former's ability to recover and produce an absconding defendant declines with the passage of time. Therefore, the statutory notice provision upholds the surety's right to an effective opportunity to secure the defendant before having its bond forfeited.

At the same time, the notice provision protects the interests of the public in an equally obvious manner because the sooner the court notifies the surety of the

9

defendant's failure to appear, the sooner the surety can begin to search for the defendant, the more effective its pursuit will be, and the sooner the defendant can be placed behind bars and prevented from further harming members of the public.[2] See Helland & Tabarrok, *The Fugitive: Evidence on Public Versus Private Law Enforcement from Bail Jumping*, 47 J L & Econ 93, 94 (2004) (noting an expectation that "the felony defendants who fail to appear are the ones most likely to commit additional crimes"); see also *Moore*, 276 Mich App at 489 (holding that a surety is authorized to arrest and deliver a defaulting defendant to the jail or to the county sheriff); MCL 765.26(1) (authorizing a surety to arrest and deliver a defendant if the surety wishes to be relieved from responsibility for the defendant). Providing timely notice to the surety also protects the public's interest in justice under law by ensuring that those who have been charged with crimes, and who have subsequently absconded, timely face those charges in court. Thus, there is a common interest served by the notice provision: a private interest of the surety in being relieved of financial responsibility under the bond and a public interest in facilitating the apprehension of an absconding defendant, both in order to protect the safety of the public and to ensure a timely trial on the criminal charges.[3]

---

[2] The prosecutor conceded at oral argument that the statutory notice provision is designed to protect the public's interest in the "seizure [or] recapture of the absconding defendant" and that the government's interest in collecting the bail money "doesn't outweigh" the public's interest in "apprehending fugitives as [e]ffectively and as quickly as possible[.]"

[3] Moreover, this public interest can also be viewed in terms of the *private* interest served with regard to eyewitnesses and other potential witnesses at trial whose safety and security are placed at particular risk by an absconding defendant.

The apprehension of absconding defendants is essential to the effective guarantee of our criminal laws, and sureties play a critical role in this regard.[4] As one commentator has recognized, sureties are a necessary part of the apprehension process because "public police are often strained for resources, and the rearrest of defendants who fail to show up at trial is usually given low precedence." *Helland*, 47 J L & Econ at 98. As a result, "the probability of being recaptured is some 50 percent higher for those released on surety bond relative to other releases," *id.* at 113, and "[d]efendants released on surety bond are . . . 53 percent less likely to remain at large for extended periods of time," *id.* at 118. These findings indicate that sureties are "effective at . . . recapturing defendants." *Id*. However, sureties can only be effective at recapturing defendants if they are aware that there is an absconding defendant who needs to be recaptured-- hence the rationale for, and the importance of, the statutory notice provision.

*Moore* also failed to recognize that the underlying rationale of Sutherland's general rule itself does not justify its application in the instant case. Although this rationale is explained in the sentence that immediately precedes the general rule, the Court of Appeals altogether failed to address it. The rationale is contained in the observation that "time provisions are often found to be directory where a mandatory construction might do great injury to persons not at fault, as in a case where slight delay on the part of a public officer might prejudice private rights or the public interest."

---

[4] Sureties also play a critical role in the process of safeguarding defendants' constitutional due process rights before trial.

3 Sutherland, § 57:19, pp 73-74.[5]  See, for example, *Dolan v United States*, 560 US 605; 130 S Ct 2533, 2539-2540; 177 L Ed 2d 108 (2010) ("The fact that a sentencing court misses the statute's 90-day deadline, even through its own fault or that of the Government, does not deprive the court of the power to order restitution" because (a) "the [statute's] efforts to secure speedy determination of restitution is *primarily* designed to help victims of crime secure prompt restitution rather than to provide defendants with certainty as to the amount of their liability" and (b) "to read the statute as depriving the sentencing court of the power to order restitution would harm those-- the victims of crime-- who likely bear no responsibility for the deadline's being missed and whom the statute also seeks to benefit.") (emphasis in the original).

By contrast, in the instant case, a mandatory construction would neither "do great injury to persons not at fault" nor "prejudice private rights or the public interest." 3 Sutherland, § 57:19, pp 73-74.  Indeed, just the opposite is true.  Not mandating timely notice of the defendant's failure to appear might well do great injury to persons not at fault because, as explained earlier, if the surety does not know that the defendant failed to

---

[5] The "exception" to Sutherland's general rule and the underlying rationale of Sutherland's general rule are really two sides of the same coin.  The underlying rationale for construing time provisions as directory is that in some instances, mandatory construction "might do great injury to persons not at fault, as in a case where slight delay on the part of a public officer might prejudice private rights or the public interest," while the exception to the general rule is that "if the time period is provided to safeguard someone's rights, it is mandatory, and the agency cannot perform its official duty after the time requirement has passed."  In other words, according to Sutherland, time provisions should be construed as directory if a mandatory construction might prejudice someone's rights or the public interest, while time provisions should be construed as mandatory if a directory construction might prejudice someone's rights or the public interest.

appear, the surety would not have begun searching for the defendant, and if the surety has not begun searching for the defendant, not only would the defendant have remained free during this period, possibly to do harm to other individuals, but the longer-term prospects of apprehension would also have been diminished. For this reason, the "public interest" in the instant case is not only *not* prejudiced by *adopting* a mandatory construction, but would instead *be* prejudiced by *not* adopting a mandatory construction. The "private rights" of the surety are also better protected by adopting a mandatory construction because, as discussed earlier, the surety will be discharged from its financial obligation under the bond once the surety finds and returns the defendant to the jail or the county sheriff, which will certainly be easier if the surety is promptly notified of the defendant's failure to appear. Even the trial court in *Moore* acknowledged "the difficulty that a surety might face in apprehending a [defendant] when the court fails to provide timely notice of the [defendant's] default." *Moore*, 276 Mich App at 496.

*Moore* also failed to realize that Sutherland recognizes circumstances that compel the necessity of mandatory constructions:

> [S]ome limitations of time within which a public officer is to act must be construed as mandatory. Such a construction is necessary where failure to obey the time limitation embodies a risk of unknown injury to public or private rights. [3 Sutherland, § 57:19, p 80.]

For the reasons already explained earlier, a court's failure to notify the surety within seven days of the defendant's failure to appear "embodies a risk of unknown injury to public or private rights." If a court fails to provide the surety with timely notice of the defendant's failure to appear, a statutory scheme designed to create an incentive for third parties to assist in the apprehension of defendants who abscond, commit new crimes, or

13

threaten other persons will almost certainly be rendered less effective and, as a result, "persons not at fault" (i.e., members of the public) will almost certainly face a greater threat from such defendants. The "private rights" implicated by a breach of MCL 765.28(1)-- in this case, $50,000 of the resources of the surety-- are even more obvious. Because "failure to obey the time limitation embodies a risk of unknown injury to public [and] private rights," a mandatory construction of the notice provision is necessary.

To summarize, by relying exclusively on Sutherland's general rule, *Moore* failed to recognize that the fact that the time period at issue here safeguards both the rights of another and the public interest is relevant not only with regard to our own caselaw, see *Lathrop*, *supra*, but also with regard to (a) Sutherland's exception to his "general rule," (b) Sutherland's underlying rationale for his general rule, and (c) Sutherland's articulation of additional circumstances that compel a mandatory construction.

Sutherland indicates that the remedy for a public entity's failure to follow a mandatory time period is that the public entity "cannot perform its official duty after the time requirement has passed." 3 Sutherland, § 57:19, p 74. This is consistent with this Court's rule in *Lathrop*, in which we explained that a public entity's "power only arises from the performance of the acts required to be done" by law. *Lathrop*, 1 Mich at 445. When a public entity does not perform its statutory obligations in a timely manner, and fails to respect the statutory preconditions to its exercise of authority, it lacks the authority to proceed as if it had. In this case, the consequence is that the court cannot require the surety to pay the surety bond because the court failed to provide the surety notice within seven days of defendant's failure to appear, as the statute clearly requires.

14

Any other interpretation of the statute would render the seven-day notice requirement entirely nugatory.

It is well established that

> [w]e have no authority to treat any part of a legislative enactment, which is not ambiguous in itself and is capable of reasonable application, as so far unimportant that it is a matter of indifference whether it is complied with or not. We must suppose the legislature saw sufficient reason for its adoption, and meant it to have effect; and whether the reason is apparent to our minds or not, we have no discretion to dispense with a compliance with the statute. [*Hoyt v East Saginaw*, 19 Mich 39, 46 (1869).]

Therefore, in the instant case, we have no authority to treat the statutory notice provision "as so far unimportant that it is a matter of indifference whether it is complied with or not." Because the statutory notice provision is a mandatory provision, it must be complied with, and if it was not, the court may not proceed with its bond forfeiture proceeding.[6]

In *Moore*, 276 Mich App at 494-495, the Court of Appeals relied on *People v Smith*, 200 Mich App 237; 504 NW2d 21 (1993), and *People v Yarema*, 208 Mich App 54; 527 NW2d 27 (1994), to conclude that the surety was not entitled to a remedy for the

---

[6] The prosecutor argues that MCR 2.613(A) bars relief. We respectfully disagree. MCR 2.613(A) provides that "[a]n . . . error or defect in anything done or omitted by the court or by the parties is not ground for . . . vacating, modifying, or otherwise disturbing a judgment or order, unless refusal to take this action appears to the court inconsistent with substantial justice." Refusing to disturb the trial court's judgment against the surety would be "inconsistent with substantial justice" for the reasons explained earlier-- namely, given that the court did not uphold its end of the bargain by notifying the surety within seven days of defendant's failure to appear, it would be "inconsistent with substantial justice" to require the surety to uphold its part of the bargain by paying the judgment on the bond. It would also undermine the public's interest in having the court timely notify the surety so that the surety can quickly find and capture absconding defendants.

15

court's violation of the seven-day notice provision. However, *Smith* and *Yarema* actually stand for the exact opposite proposition, because in those cases the Court of Appeals held that the defendant was entitled to a remedy for the government's failure to follow statutory time limits. That is, in *Smith* and *Yarema*, the Court of Appeals held that the remedy for the failure to arraign the defendant within 14 days, as required by MCL 257.625b(1), was a dismissal without prejudice. *Smith* and *Yarema* in turn relied on this Court's decision in *People v Weston*, 413 Mich 371, 377; 319 NW2d 537 (1982).

*Weston* involved MCL 766.4, which states that the magistrate "*shall* set a day for a preliminary examination not exceeding 14 days after the arraignment." This Court held that because the statute contains an "unqualified statutory command that the examination be held within 12 days," "[t]he failure to comply with the statute governing the holding of the preliminary examination entitles the defendant to his discharge." *Weston*, 413 Mich at 376. Therefore, these cases actually undermine *Moore*'s assumption that there is no remedy for a statutory violation unless the Legislature expressly states that there is a remedy. See also *In re Contempt of Tanksley*, 243 Mich App 123, 128-129; 621 NW2d 229 (2000) ("Given the clear legislative mandate that a respondent be afforded a hearing on a charged [personal protection order] violation within seventy-two hours, we hold that a violation of the time limit expressed in MCL 764.15b(2)(a) or MCR 3.708(F)(1)(a) demands dismissal of the charge.").

Finally, *Moore* also relied on MCL 765.27 to conclude that "[t]he Legislature has plainly declared that the trial court's failure to provide proper notice of a principal's default does not bar or preclude the court's authority to enter judgment on a forfeited recognizance." *Moore*, 276 Mich App at 495. MCL 765.27 provides:

16

No action brought upon any recognizance entered into in any criminal prosecution, either to appear and answer, or to testify in any court, shall be barred or defeated nor shall judgment thereon be arrested, by reason of any neglect or *omission to note or record the default* of any principal or surety at the time when such default shall happen, nor by reason of any defect in the form of the recognizance, if it sufficiently appear, from the tenor thereof, at what court the party or witness was bound to appear, and that the court or a magistrate before whom it was taken was authorized by law to require and take such recognizance. [Emphasis added.]

Contrary to *Moore*'s assertion, MCL 765.27 does not refer to the trial court's "failure to provide proper *notice* of a principal's default." (Emphasis added.) Instead, it merely refers to the failure "to *note or record* the default." (Emphasis added.) In this case, there is no question that the trial court did, in fact, "note or record" the default; it just did not notify the surety of the default within seven days. Therefore, reliance on MCL 765.27 is inapt.

For all these reasons, we conclude that *Moore* was wrongly decided, and therefore we overrule it. Where a statute provides that a public officer "shall" do something within a specified period of time and that time period is provided to safeguard someone's rights or the public interest, as does the statute here, it is mandatory, and the public officer is prohibited from proceeding as if he or she had complied with the statutory notice period.[7]

---

[7] We note that it makes no practical difference whatsoever whether the general rule is expressed in the manner set forth in Sutherland (when a statute provides that a public officer "shall" do something within a specified period of time, it is directory *unless* the time period is provided to safeguard someone's rights or the public interest) or in the manner set forth in this opinion (when a statute provides that a public officer "shall" do something within a specified period of time and the time period is provided to safeguard someone's rights or the public interest, it is mandatory). Both articulations lead to the same result. We adopt the latter articulation, however, because it would seem to be the case more often than not that when the Legislature has chosen to direct a public officer to do something within a specified time, it has done so in order to safeguard another's rights

17

## IV. CONCLUSION

Because we conclude that *Moore* was wrongly decided, we overrule it and hold that a court's failure to comply with the seven-day notice provision of MCL 765.28(1) bars forfeiture of a bail bond posted by a surety. When a statute provides that a public officer "shall" do something within a specified period of time and that time period is provided to safeguard someone's rights or the public interest, as does the statute here, it is mandatory, and the public officer who fails to act timely is prohibited from proceeding as if he or she had acted within the statutory notice period. Accordingly, we reverse the judgment of the Court of Appeals and vacate the trial court's orders to the extent that the orders forfeited the bail bond posted by the surety and ordered the surety to pay $50,000.

Stephen J. Markman
Robert P. Young, Jr.
Michael F. Cavanagh
Mary Beth Kelly
Brian K. Zahra
Bridget M. McCormack
David F. Viviano

---

or the public interest, and thus, more often than not, the directive would be mandatory rather than directory. Moreover, the latter articulation has the considerable virtue of communicating as the default position in interpreting the law that "shall" means "shall." *Webster's Seventh New Collegiate Dictionary* (1967) (defining "shall" as "used to express a command or exhortation"; "used in laws, regulations, or directives to express what is mandatory").

18

STATE OF MICHIGAN

SUPREME COURT

_____

*In re* FORFEITURE OF BAIL BOND

_____

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v                                        No. 146033

COREY DESHAWN GASTON,

        Defendant,

and

YOU WALK BAIL BOND AGENCY, INC.,

        Surety-Appellant.

_____

YOUNG, C.J. (*concurring*).

I fully join the majority's opinion. I write separately, however, to note that the majority's holding is perfectly consistent with the recognized narrow exception to the general rule that courts must refrain from creating remedies for statutory violations where the Legislature has not seen fit to provide a remedy.[1]

---

[1] See *Lash v City of Traverse City*, 479 Mich 180, 193; 735 NW2d 628 (2007); *People v Anstey*, 476 Mich 436, 445 n 7; 719 NW2d 579 (2006) ("Because the Legislature did not provide a remedy in the statute, we may not create a remedy that only the Legislature has the power to create.").

Generally speaking, this Court applies the plain meaning of the words used in a statute.[2] When a statute contains a mandate but does not specify an accompanying remedy for violating that mandate, courts must refrain from creating a remedy.[3] However, when the legislative mandate is a time limitation imposed on the government, this general rule of refraining from fashioning a remedy contains a notable exception:[4] if the time limitation is provided to safeguard the rights of a party, courts may provide a limited remedy by *precluding* the government from acting in derogation of the mandate and to the detriment of the protected party.[5]

This narrow exception, first recognized more than a century ago by this Court in *Agent of State Prison v Lathrop*,[6] does not vest courts with the unbridled authority to fashion whatever remedy they deem just. Rather, the limited remedy provided by the *Lathrop* exception, whether characterized by the majority or by this Court's earlier holdings, is properly understood as a *restraint* on official action, and it does not permit

---

[2] See *People v Wilcox*, 486 Mich 60, 64; 781 NW2d 784 (2010).

[3] See note 1 of this opinion.

[4] This narrow exception is consistent with the general rule of statutory interpretation reiterated by this Court in *Lash v Traverse City*, see note 1 of this opinion, and does *not* provide for an extrastatutory remedy for the violation of a time limitation placed on an official action. As the majority correctly notes, Sutherland's characterization of the general rule is that "if a provision of a statute states a time for performance of an official duty, without any language denying performance after a specified time, it is directory." 3 Sutherland, Statutory Construction (5th ed), § 57:19, p 74.

[5] See *Agent of State Prison v Lathrop*, 1 Mich 438, 444 (1850); *Fay v Wood*, 65 Mich 390, 401; 32 NW 614 (1887); *People v Smith*, 200 Mich App 237, 242-243; 504 NW2d 21 (1993).

[6] *Lathrop*, 1 Mich at 444.

2

courts to fashion additional extrastatutory remedies permitting official action.[7]  Because I have previously identified the adverse consequences that occur when courts are free to cast aside the Legislature's intent under the guise of imposing fairness and equity,[8] I am compelled to underscore the limited scope of the relief available under the exception outlined by the majority today.  The narrow exception applied today, *restraining* the performance of official action, provides no cognizable basis for courts to fabricate remedies out of whole cloth.

Robert P. Young, Jr.

---

[7] As the majority correctly notes, "the public officer who fails to act timely *is prohibited from proceeding* as if he or she had acted within the statutory notice period."  (Emphasis added.)  This characterization is consistent with Sutherland's, which states that "if the time period is provided to safeguard someone's rights, it is mandatory, *and the agency cannot perform its official duty after the time requirement has passed*."  3 Sutherland, § 57:19, p 74.  Both of these statements align with this Court's prior holding that time limits for the performance of an official act "will be regarded as directory merely, unless the nature of the act to be performed . . . show that the designation of time was *considered as a limitation of the power of the officer*."  *Lathrop*, 1 Mich at 441 (emphasis added; citation and quotation marks omitted).

[8] *Devillers v Auto Club Ins Ass'n*, 473 Mich 562, 591; 702 NW2d 539 (2005) ("Indeed, if a court is free to cast aside, under the guise of equity, a plain statute . . . simply because the court views the statute as 'unfair,' then our system of government ceases to function as a representative democracy.  No longer will policy debates occur, and policy choices be made, in the Legislature.  Instead, an aggrieved party need only convince a willing judge to rewrite the statute under the name of equity.").

## STATE OF MICHIGAN

## SUPREME COURT

_____

*In re* FORFEITURE OF BAIL BOND

_____

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v                                 No. 146033

COREY DESHAWN GASTON,

        Defendant,

and

YOU WALK BAIL BOND AGENCY, INC.,

        Surety-Appellant.

_____

VIVIANO, J. (*concurring*).

The majority concludes that because compliance with the notice requirement in MCL 765.28(1) is mandatory, a court is prohibited from ordering forfeiture of a bail bond if the court has not complied with the statutory notice requirement. I agree, but I write separately because I believe the applicable rule of statutory construction also requires discharge of a surety's bond when a trial court fails to provide timely notice to the surety.

### I. ANALYSIS

The majority and the Chief Justice agree on the applicable rule of statutory construction, although they state it differently. The majority says that, when an official

fails to perform a duty within a mandatory time limit, "noncompliant public officers are prohibited *from proceeding as if they had complied* with the statute."[1]   The Chief Justice says that when a statute imposes a time limit "to safeguard the rights of a party, courts may provide a limited remedy by *precluding the government from acting in derogation of the mandate and to the detriment of the protected party*."[2]   However this rule is stated, I believe it requires discharge of the surety's bond.

There are two ways that a trial court can "proceed as if it had complied with the statute." First, the court can forfeit the bond and collect a monetary judgment from the surety.[3]   Second, the court can rely on the bond to motivate the surety to find the absconding defendant so that the surety can have the forfeiture set aside and the bond discharged.[4]  In either scenario, the court receives a benefit based on its compliance with the notice provision of the statute.

Likewise, there are two ways that a court can act "to the detriment" of a surety after failing to provide immediate notice not to exceed seven days after a defendant's failure to appear, as required by MCL 765.28(1).  First, a court can order forfeiture of the surety's bond, and enter a judgment against the surety for the full amount of the bond.

---

[1] *Ante* at 2 (emphasis added).

[2] *Ante* at 2 (emphasis added).

[3] MCL 765.28(1).

[4] See MCL 765.28(2).  To qualify to have the forfeiture set aside and the bond discharged, the surety must satisfy certain conditions, including (1) fully paying the judgment within 56 days after the forfeiture judgment was entered, MCL 765.28(3), and (2) apprehending the defendant within one year from the date of the forfeiture judgment, MCL 765.28(2).

2

The majority's holding prevents this type of injury. The second way a trial court can injure a surety is by retaining a surety's bond. By retaining a bond after failing to give the statutorily required notice, a trial court encumbers a surety with an obligation that, as the majority explains, the surety has little to no chance of ever being able to fulfill.[5] This injury is no less real than the injury of paying a judgment—a surety's financial capacity to bond out other defendants will be compromised by a debt that, through no fault of its own, it will most likely never be able to discharge.[6]

Unless noncompliance with MCL 765.28(1) requires discharge of a surety's bond, a trial court will be able to perpetuate a surety's injury indefinitely even if the court does not comply with the mandatory language of the statute. Furthermore, by retaining the bond in such a case, a trial court will be able to "proceed as if it had complied" with its statutory duty—the court would be free to retain a bond in the hope of motivating a surety to find an absconding defendant, even if the trail has grown cold because of the trial court's own nonfeasance. This result would be inconsistent with the rule of statutory construction on which the majority and the Chief Justice rely. If the governing rule is that "noncompliant public officers are prohibited from proceeding as if they had complied with the statute," then noncompliance requires discharge of the bond. Otherwise, the statute's notice requirement will be "directory" because trial courts will remain free to disregard their notice obligations "to the detriment" of sureties. Absent

---

[5] *Ante* at 9-11, 12-14.

[6] Furthermore, if the surety had posted any collateral for its bond, the Chief Justice's rule would allow the court to retain the collateral in escrow indefinitely, again, through no fault of the surety, even though the court would never be able to collect the collateral.

3

discharge, trial courts will not be restrained from further action in derogation of the statute.

Contrary to the Chief Justice's suggestion, to require discharge in this case would not be to "cast aside the Legislature's intent under the guise of fairness and equity."[7] Nor would doing so amount to "fabricat[ing]" a remedy "out of whole cloth."[8] As I have explained, requiring the trial court to discharge the surety's bond is the logical consequence of the Chief Justice's own stated rule of statutory construction. The Chief Justice offers no account of how a trial court would not be proceeding in derogation of its "mandate and to the detriment of the protected party" if it retained a bond after failing to provide the notice required by statute.[9] Unfortunately, even though this case squarely presents the question and this Court has invoked the legal principles necessary to answer it, sureties in the state of Michigan will have to await some future case to learn whether a trial court's noncompliance with MCL 765.28(1) requires discharge of a surety's bond.

## II. CONCLUSION

I agree with the majority that, absent compliance with the notice provision in MCL 765.28(1), a trial court may not order a surety to forfeit its bond. However, I would

---

[7] *Ante* at 3.

[8] *Ante* at 3.

[9] Further, it is hard for me to conclude that the Legislature intended to create a legal fiction—a new class of security that must remain pledged but can never be collected—without uttering even a single word on the subject.

4

also hold that because the notice requirement in MCL 765.28(1) is mandatory, a court's noncompliance with that provision mandates discharge of the bond.

David F. Viviano
Michael F. Cavanagh
Stephen J. Markman

5